1    ROUTH CRABTREE OLSEN, P.S.                    The Honorable Erithe A. Smith
     Charles E. Katz, SBN 236804
2    13555 SE 36th St, Suite 300
     Bellevue, WA 98006
3    Tele: 425-586-1940; Fax: 425-440-6032

4    Attorneys for Defendants,
     Northwest Trustee Service, Inc.

5

6

7                       UNITED STATES BANKRUPTCY COURT
                           CENTRAL DISTRICT OF CALIFORNIA
8                              SANTA ANA DIVISION

9    In Re:                              )
                                         )    Case No:  8:11-bk-11149
10   ELIZABETH BARNES                     )
                                         )    Adv. No.: 8:11-ap-01043
11   ─────────────────────────────        )
                                         )    Chapter 13
12   ELIZABETH BARNES, an individual,     )
                                         )
13                          Plaintiff,    )
                                         )
14                  v.                    )    NOTICE OF MOTION AND
                                         )    MOTION TO DISMISS COMPLAINT
15   HSBC Bank USA, National Association, as )  AGAINST NORTHWEST TRUSTEE
     Trustee J.P. Morgan Mortgage Trust 2007-a1, ) SERVICES, INC.; MEMORANDUM
16   under pooling and servicing agreement dated ) OF POINTS AND AUTHORITIES IN
     January 1, 2007, its assigns and/or successors ) SUPPORT THEREOF
17   in interest; JPMorgan Chase Bank, N.A.; J.P. )
     Morgan Acceptance Corporation I; J.P.       )
18   Morgan Mortgage Acquisition Corporation;    )
     Northwest Trustee Services, Inc.; Global     )
19   Provision, LLC; and Unknown Defendants 1     )
     through 10, inclusive.                       )
20                                               )
                            Defendants.          )
21                                               )
     ─────────────────────────────────────        )

22                 TO PLAINTIFF AND HIS ATTORNEY OF RECORD

23          Please take notice that, on May 31, 2011, at 2:00PM, or as soon thereafter as counsel may

24   be heard in Courtroom 5A of the above-entitled Court, located at 411 West Fourth Street, Santa

25   Ana, California 92701, Defendant Northwest Trustee Services, Inc. ("NWTS") will and does

26   hereby move this Court for an order dismissing Plaintiff's Complaint in its entirety without leave to

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    amend.  This motion is based on this notice, accompanying motion, memorandum of points and

2    authorities, Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), applicable in

3    bankruptcy matters pursuant to Federal Rules of Bankruptcy Procedure Rule 7012, and any and

4    all other evidence, declarations, documents or pleadings in the Court files, and any oral argument

5    presented at the hearing.

6

7    DATED: on this 18th day of February , 2011.

8

9                           **ROUTH CRABTREE OLSEN, P.S.**

10

11                   By: _____

12                        Charles E. Katz, Esq.
                           Attorneys for Defendant
                           Northwest Trustee Services, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff filed this adversary proceeding against Defendant NWTS on January 26, 2011 seeking declaratory relief to determine the nature, extent and validity of a lien, to disallow a secured claim, to set aside a Trustee's Deed Upon Sale, for a TILA Violation (the body of the complaint contains no allegations of a TILA violation), sanctions and "other" relief. Plaintiff's claims are without merit and fail to state a claim upon which relief can be granted. In addition, Plaintiff fails to allege proper tender which is required whenever a party seeks to set aside a foreclosure sale.

### II.      FACTUAL BACKGROUND

On or about January 4, 2005, Plaintiff executed a promissory Note ("Note") in the principal amount of $800,000.00, payable to Lender/Beneficiary, JPMorgan Chase Bank, N.A. (a true and correct copy of the Note is attached hereto as Exhibit "1" and incorporated herein). On or about January 4, 2005, Plaintiff, as Borrower, executed a Deed of Trust ("DOT") with JPMorgan Chase Bank, N.A. and as Lender, United Title Company as Trustee, in the principal amount of $800,000.00 (a true and correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein). The DOT was subsequently recorded on January 11, 2005 as Instrument No. 2005000022661 in the Official Records of Orange County, California. The Deed of Trust was secured with the Plaintiff's property located at 6461 Oakcrest Circle, Huntington Beach, California 92648 ("Property").

On March 30, 2009, JP Morgan Chase Bank, N.A., as Lender/Beneficiary under the DOT, assigned all beneficial interest under the DOT to HSBC Bank, USA, as Trustee by recording an Assignment of Deed of Trust ("ADOT") as Instrument No. 2009000148432 in the Official Records of Orange County, California (a true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit "3") and incorporated herein). HSBC Bank USA, as Trustee, acting as Beneficiary, subsequently substituted NWTS as Trustee under the DOT by recording a

NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
PAGE 3 OF 9

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Substitution of Trustee on April 1, 2010 as Instrument No. 2101000152855 in the Official

2    Records of Orange County, California (a true and correct copy of the Substitution of Trustee is

3    attached hereto as Exhibit "4" and incorporated herein).  On September 9, 2010, the Property was

4    sold at a foreclosure sale and NWTS conveyed the Property to Global Provision LLC via

5    Trustee's Deed Upon Sale which recorded on September 14, 2010 as Instrument No.

6    2010000453697 in the Official Records of Orange County, California ((a true and correct copy of

7    the Trustee's Deed Upon Sale is attached hereto as Exhibit "5" and incorporated herein).

### III.    ARGUMENT

#### A.    Standards Governing Rule 12(b)(6) Motion

10        FRCP 12(b)(6), applicable in bankruptcy matters pursuant to Federal Rules of Bankruptcy

11    Procedure Rule 7012, permits the Court to dismiss a cause of action where the pleading fails to

12    state a claim upon which relief can be granted.  The motion tests the legal sufficiency of the

13    claims stated in the complaint.  The Court must decide whether the facts alleged, if true, would

14    entitle Plaintiff to some form of legal remedy against the Defendant (NWTS).  If the answer is

15    no, the motion must be granted. *De La Crux v. Tormey,* 582 F.2d 45, 48 (1978).

16        A Rule 12(b)(6) dismissal is proper where there is either a "lack of cognizable legal

17    theory" or "the absence of sufficient facts alleged under a cognizable legal theory: to support a

18    claim against the moving defendant. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699

19    (1990).  A complaint must be dismissed under Rule 12(b)(6) if it fails to plead enough facts to

20    state a claim to relief that is plausible on its face. *Bell v. Twombly,* 127 S.Ct. 1955, 1974 (2007);

21    *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  For purposes of Rule 12(b)(6), "claim"

22    means a set of facts which, if established, gives rise to one or more enforceable legal rights.

23    *Goldstein v. New Jersey Trust Co.,* Fed. R. Dec. 363-366 (1966).

#### B.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Because No Actual Controversy Exits as Between Plaintiff and NWTS.

26        As a threshold requirement, a declaratory relief action must involve an actual "case or

NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
PAGE 4 OF 9

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    controversy" so the court does not render an impermissible advisory opinion. *Veoh Networks,*

2    *Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1268 (S.D. Cal. 2007); *see also Flast v.*

3    *Cohen*, 392 U.S. 83, 95-96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Coalition for a Healthy Cal.*

4    *v. F.C.C.*, 87 F.3d 383, 386 (9th Cir.1996) (recognizing that "federal courts have never been

5    empowered to render advisory opinions"). Additionally, declaratory relief is only appropriate

6    when the matter is properly within federal court subject matter jurisdiction. 28 U.S.C. § 2201;

7    *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

8          Plaintiff admits to executing a Note payable to JP Morgan Chase Bank, N.A. and securing

9    payment of the Note by executing a Deed of Trust encumbering the Property (Complaint ¶ 18).

10    Plaintiff <u>never</u> denies that Plaintiff failed to make the required loan payments and that the loan

11    went into default, but the gravamen of Plaintiff's Complaint is that "[i]t is unclear who holds the

12    underlying debt or the Deed of Trust because the purported Assignment of Deed of Trust was

13    never recorded with the land records" (Complaint ¶ 28).  Without stating any factual basis for

14    their allegations, Plaintiff merely concludes Defendant HSBC does not hold both the Note and

15    Deed of Trust (Complaint ¶ 36), that the lien is void (Complaint ¶ 37) and that conveyance of the

16    Trustee's Deed Upon Sale issued by NWTS constitutes fraud (Complaint ¶ 41).

17          Plaintiff's reliance is misplaced because the basis for Plaintiff's allegations is an

18    unrecorded Assignment of Deed of Trust.  Plaintiff fails, however, to include or address the

19    actual operative Assignment of Deed of Trust recorded on March 30, 2009 whereby JPMorgan

20    Chase Bank, N.A., as Beneficiary, assigned the beneficial interest under the Deed of Trust to

21    HSBC Bank, USA, as Trustee.  Even if the Court, for any reason, deemed the Assignment of

22    Deed of Trust defective, this would simply result in a defective non-judicial foreclosure, not

23    avoidance of the lien as Plaintiff alleges.  But the facts clearly demonstrate the Assignment of

24    Deed of Trust from JPMorgan Chase Bank, N.A. to HSBC Bank, USA, as Trustee, is not only

25    free of defects, but properly recorded in the Official Records of Orange County, California.

26          Plaintiff's allegation that the actions of NWTS in conveying the Property via Trustee's

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  Deed Upon Sale subsequent to the foreclosure sale constitutes fraud because NWTS lacked the

2  power to make such a conveyance is also misplaced because HSBC Bank, USA, as Trustee,

3  properly substituted NWTS as Trustee under the Deed of Trust by properly recording a

4  Substitution of Trustee (see Exhibit "5") in the Official Records of Orange County, California

5  (see Fraud discussion below).

6       Because the facts demonstrate NWTS properly conducted a non-judicial foreclosure sale

7  pursuant to *California Civil Code* § 2924, et.seq., no actual controversy exits and NWTS

8  respectfully requests the Court grant its Motion to Dismiss.

9       **C.**    **Plaintiff's Second Claim for Relief Pleads the Identical Allegations as the**

10  **First Claim for Relief (Declaratory Relief to Determine an Interest in Property).**

11       Plaintiff's allegations in its Second Claim for Relief are identical to the allegations in

12  Plaintiff's First Claim for Relief; therefore NWTS' argument will not be repeated.

13       **D.**    **Plaintiff's Third Claim for Relief is Against Defendant HSBC, not NWTS.**

14       Plaintiff's third claim seeks relief against Defendant HSBC, not NWTS; therefore no

15  argument is presented by NWTS.

16       **E.**    **Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted for**

17  **Fraud.**

18       The elements of a California fraud claim are: 1) misrepresentation (false representation,

19  concealment or nondisclosure); 2) knowledge of the falsity (or "scienter"); 3) intent to defraud;

20  4) justifiable reliance; and 5) resulting damage. *Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49

21  Cal.Rptr.2d 377 (1996).  In order for a Plaintiff to claim fraud as the basis for canceling a deed of

22  trust, they must plead the elements of fraud with particularity. *Stansfield v. Starkey,* 220,

23  Cal.App.3d 59, 73 (1990).   As against a corporate entity, all of these elements must be

24  specifically alleged, in addition to the name and/or authority of each person who made each

25  untrue statement. *Tarmann v. State Farm Mut. Auto Ins. Co.,* 2 Cal.App.4th 153, 157 (1991).

26       Plaintiff's Complaint is filled with conclusory statements regarding NWTS including

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   allegations that an unrecorded Assignment of Deed of Trust constitutes forgery and fraud

2   (Complaint ¶ 64).  The allegations in the Complaint are severely lacking and fail to satisfy the

3   particularity requirements of who, what and how required when alleging fraud.  The Complaint

4   makes no effort to allege names of persons at NWTS who made the allegedly fraudulent

5   representations, their authority to speak, to whom they spoke, what they said or wrote, and when

6   it was said or written.  The Complaint fails to substantiate the circumstances alleging falseness

7   attributable to NWTS or even what actions on the part of NWTS in which Plaintiff justifiably

8   relied.   Plaintiff fails to support each fraud element in the allegations; therefore NWTS

9   respectfully requests that the Court grant its Motion to Dismiss.

10      **F.      NWTS is Immune From Liability to Plaintiff**

11      California Civil Code § 47(b) provides NWTS with immunity applicable in this action.

12   The acts and duties of a Trustee under a Deed of Trust with respect to a non-judicial foreclosure

13   proceeding are authorized and governed by California Civil Code § 2924, *et seq.*   Section

14   2924(d) states:

> "All of the following shall constitute privileged communications
> pursuant to Section 47:
> (1) The mailing, publication, and delivery of notices as required by
>      this section.
> (2) Performance of the procedure set forth in this article.
> (3) Performance of the functions and procedures set forth in this
>      article if those functions and procedures are necessary to carry
>      out the duties as described in Sections 729.040, 729.050, and
>      729.080 of the Code of Civil Procedure."

21      In this case, NWTS acted as Trustee under the Deed of Trust held by JPMorgan Chase

22   Bank, N.A. which beneficial interest was subsequently and properly assigned to HSBC Bank,

23   USA, as Trustee, which is the subject of the allegations made by Plaintiff.  NWTS simply

24   performed its duties under the Civil Code and, as such, cannot be held liable to Plaintiff.  There

25   are no allegations, nor is there any evidence, that NWTS did, or did not do, anything outside the

26   normal course and scope of its duties as Trustee.  As Trustee, NWTS takes instructions and

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    direction from the Beneficiary under the Deed of Trust.  The Trustee merely follows the

2    instructions of the Beneficiary.  The Trustee under a Deed of Trust is not a true trustee in the

3    normal sense and is a common agent for the Trustor and the Beneficiary, and only has a duty to

4    "reconvey" the deed of trust to the trustor upon satisfaction of the debt owed to the beneficiary,

5    resulting in a release of the lien created by the deed of trust, or to initiate non-judicial foreclosure

6    proceedings on the property upon the trustor's default, resulting in the sale of the property.

7    Absent malice, which has not been alleged by Plaintiff, Plaintiff cannot recover from NWTS.  At

8    least on partially published case in California is on point and supports NWTS with respect to

9    immunity. See *Kachlon v. Markowitz,* 168 Cal.App.4[th] 316 (2008).

10       Pursuant to FRCP 12(b)(6), dismissal is appropriate where no claim for relief has been

11   stated.  Due to the immunity to which NWTS is entitled, Plaintiff has failed to state any claim

12   against NWTS.  Accordingly, the entire Complaint should be dismissed as to NWTS, or at least

13   as to any monetary damages, attorneys' fees, costs and punitive damages.

14       **G.    Plaintiff's Sixth Claim for Relief to Remove Cloud From Title is a Remedy, not a Cause of Action.**

15

16       Plaintiff seeks an order from this Court that the Deed of Trust is a cloud upon the

17   Plaintiff's title and that it should be stricken from the land records in Orange County, California

18   (Complaint ¶ 82).  No action by NWTS caused the Deed of Trust to be recorded as a consensual

19   lien on the property and no allegations by Plaintiff demonstrate any action on the part of NWTS

20   that would cause the Deed of Trust to be stricken from the land records.  Accordingly, NWTS

21   respectfully requests that the Court grant its Motion to Dismiss.

22       **H.    Plaintiff Fails to Allege Proper Tender**

23       As a matter of law, in order to challenge or set aside a foreclosure sale for any reason, or

24   to bring any claim that arises from a foreclosure sale, Plaintiff must allege proper tender.

25   (*Abdallah v. United Savings Bank*, (1996) 43 Cal.App.4[th] 1101, 1109; see also, *United States*

26   *Cold Storage v. Great Western Savings & Loan Assoc.*, (1985) 165 Cal.App.3d 1214, 1222;

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    *Karlsen v. American Savings & Loan Assoc,*, (1971) 15 Cal.App.3d 112, 117).

2    As a condition precedent to any action challenging a foreclosure, the borrower must

3    tender or offer to tender a sum sufficient to cure the default. (Karlsen, supra, at p. 117 (judgment

4    on the pleadings granted); Arnolds Management Corp. v. Fisher, (1984) 159 Cal.App.3d 575,

5    578-579; see also, 4 Miller & Starr, California Real Estate, § 9, 154, pp. 507-8 (2d Ed. 1989) and

6    authorities cited therein).   Further, the tender must have been made in good faith, the party

7    making the tender must have had the ability to perform, and the tender must have been

8    unconditional. (See Miller & Starr, supra; see also Civil Code § 1486 (full performance), 1493

9    (good faith), 1494 (unconditional) and 1495 (offeror must have ability to perform)).   The tender

10   requirement has been extended to apply to any cause of action arising from an alleged improper

11   foreclosure. (Karlsen, supra, at p. 117; Arnolds Management Corp., supra. at 578-579).   Here, the

12   foreclosure sale occurred on November 3, 2009, however, Plaintiff does not allege he offered

13   proper tender to cure any delinquency; therefore Defendant respectfully requests that the Court

14   grant its Motion to Dismiss.

15                      **IV.    CONCLUSION**

16   For the reasons set forth above, Defendant requests that the Court grant its Motion to

17   Dismiss without leave to amend, for an award of attorneys' fees and costs, and for such other and

18   proper relief as the Court deems just.

19

20   DATED: on this 18th day of February, 2011.

21

22                                      **ROUTH CRABTREE OLSEN, P.S.**

23

24                      By: _____

25                                      Charles E. Katz, Esq.
                                        Attorneys for Defendant
26                                      Northwest Trustee Services, Inc.

NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
PAGE 9 OF 9

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# FIXED/ADJUSTABLE RATE NOTE
**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

January 4, 2005                    Westminster                         CA
[Date]                                    [City]                              [State]

6461 Oakcrest Cir
Huntington Beach, CA  92648
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 800,000.00             (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
JPMorgan Chase Bank, N.A.
a bank which is organized and existing under the laws of the United States of America
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.750             %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on  March 1st, 2005             .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  February 1, 2035                     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at JPMorgan Chase Bank, N.A.,  c/o Chase Home Finance, LLC
3415 Vision Drive, Columbus, OH  43219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 4,173.18                     . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of February, 2010             , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.
1595855333
MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument



VMP-168N (0210)          Form 3528 6/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5          Initials:

EXHIBIT NO. _____
OF _____ 5

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and one-quarter** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.750** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.750** %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1595855333

Initials

EXHIBIT NO. ___

___ OF ___

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

1595855333

Form 3528 3/01

Initials:

**EXHIBIT NO.** OF

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1595855333

Form 3528 6/01
Initials

EXHIBIT NO _____

_____ OF ____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Howard Barnes

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Elizabeth Barnes

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

[Sign Original Only]

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.

BY: _____
SERINA LEE/ASSISTANT SECRETARY

1595855333

Form 3528 6/01

EXHIBIT NO. ____5____
____5____ OF ____5____

This Document was electronically recorded by
United Title Company

Recording Requested By:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA  71211

|||||||||||||||||||||||||||||||| 75.00
2005000022661 08:00am 01/11/05
119 8 D11 24
0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

Prepared By:

# UNITED TITLE COMPANY

——————————————————— [Space Above This Line For Recording Data] ———————————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  January 4, 2005
together with all Riders to this document.
(B) "Borrower" is
Howard Barnes and
Elizabeth Barnes, Husband and Wife as Joint Tenants

Borrower's address is  6461 Oakcrest Cir
Huntington Beach, CA  92648                      . Borrower is the trustor under this Security Instrument.
(C) "Lender" is
JPMorgan Chase Bank, N.A.
Lender is a  national banking association
organized and existing under the laws of the United States of America

████5333

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01

VMP -6(CA) (0207)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT NO ___2/A___
OF ___7/A___

Lender's address is
1111 Polaris Parkway, Columbus, OH 43240
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is United Title Company

(E) "Note" means the promissory note signed by Borrower and dated January 4, 2005
The Note states that Borrower owes Lender
Eight hundred thousand and 00/100                                                         Dollars
(U.S. $   800,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than February 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider            [X] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider     [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-6(CA) (0207)                          Page 2 of 15                    Initials: [signature]    Form 3005   1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**COUNTY** of **ORANGE**                                                                         :
      [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

**See attached Schedule A**

Parcel ID Number: 02350621                                              which currently has the address of
6461 Oakcrest Cir                                                                                      [Street]
Huntington Beach                                           [City], California  92648          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

███5333

Initials

-6(CA) (0207)                              Page 3 of 15                              Form 3005  1/01

**EXHIBIT NO.** _____ OF _____

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**EXHIBIT NO** ___
___ **OF** ___

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

5333

-6(CA) (0207)                    Page 7 of 15                    Initials                    Form 3005   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

███████5333

VMP®  -6(CA) (0207)                    Page 9 of 15                    Initials: _____    Form 3005   1/01

EXHIBIT NO. _____
OF _____

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

EXHIBIT NO_____1
_____11_____ OF ___12___

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT NO____ 1
____ OF ____ 14

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

■■■■5333

EXHIBIT NO ____
____ OF ____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    Howard Barnes                 -Borrower

_____    _____ (Seal)
                                    Elizabeth Barnes              -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                         -Borrower

VMP -6(CA) (0207)                   Page 14 of 15                   Form 3005   1/01

EXHIBIT NO _____ 2 _____
_____ 14 _____ OF _____ 14 _____

ORDER NO  30413526-30

# SCHEDULE "A"

LOT 128 OF TRACT NO. 13821, IN THE CITY OF HUNTINGTON BEACH
COUNTY OF ORANGE, STATE OF CALIFORNIA AS PER MAP RECORDED IN
BOOK 636 PAGE (S) 21 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT  THEREFROM  ALL  OIL,  GAS,  MINERALS  AND  OTHER
HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND,
BUT  WITHOUT  THE  RIGHT  OF  SURFACE  ENTRY,  AS  RESERVED  OR
GRANTED IN DOCUMENTS OF RECORD.

EXHIBIT NO_____
_____ OF ____

State of California
County of   ORANGE                                          } ss.

On    1/05/05           before me,   CAMTHY NGO,  NOTARY PUBLIC

personally appeared

Howard Barnes
Elizabeth Barnes

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

CAMTHY NGO
COMM. #1369767
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Aug 13, 2006

_____ (Seal)

5333

VMP -6(CA) (0207)              Page 15 of 15         Initials          Form 3005   1/01

EXHIBIT NO
OF

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **4th** day of
**January      2005** , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

**JPMorgan Chase Bank, N.A.**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
**6461 Oakcrest Cir
Huntington Beach, CA  92648**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

**Covenants, Conditions and Restrictions**
(the "Declaration"). The Property is a part of a planned unit development known as

**Seacliff Estates II**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

▬▬▬5333

MULTISTATE PUD RIDER- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3150 1/01
                                    Page 1 of 3                                  Initials
VMP®-7R (0008)                VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT NO____
____ OF ____

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP-7R (0008)                          Page 2 of 3          Initials          Form 3150 1/01

EXHIBIT NO ___
___ OF ___

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
           -Borrower          Howard Barnes            -Borrower

_____ (Seal)          _____ (Seal)
           -Borrower          **Elizabeth Barnes**            -Borrower

_____ (Seal)          _____ (Seal)
           -Borrower                             -Borrower

_____ (Seal)          _____ (Seal)
           -Borrower                             -Borrower

▬▬▬5333

-7R (0008)                        Page 3 of 3                        Form 3150 1/01

EXHIBIT NO_____
_____ OF _____

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this   4th      day of January, 2005                 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
JPMorgan Chase Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
6461 Oakcrest Cir
Huntington Beach, CA  92648

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of  4.750                  %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
February, 2010                          , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

█████5333

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family -
Fannie Mae Uniform Instrument
Ⓥ**-168R** (0108)       Form 3187 6/01
Page 1 of 4          Initials:
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and one-quarter** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.750** % or less than **2.250** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.750** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

▬▬▬5333

-168R (0108)    Page 2 of 4    Initials: ___    Form 3187 6/01

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

5333

Initials:

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)               _____ (Seal)
-Borrower                                      -Borrower
                                   Howard Barnes

_____ (Seal)               _____ (Seal)
-Borrower                                      -Borrower
                  Elizabeth Barnes

_____ (Seal)               _____ (Seal)
-Borrower                                      -Borrower

_____ (Seal)               _____ (Seal)
-Borrower                                      -Borrower

5333

VMP-168R (0108)               Page 4 of 4               Form 3187 6/01

EXHIBIT NO _____2_____
_____172_____ OF _____72_____

# UNITED TITLE COMPANY

## PENALTY OF PERJURY AFFIDAVIT
### (GOVERNMENT CODE 27361.7)

I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of the Notary: _____*Camthy Ngo*_____

Date Commission expires: _____*8-13-06*_____

County Where Bond is Filed: _____*Orange*_____

Commission No.: _*1369767*_ Manufacturer/Vendor No.: _*ES17*_

Place of Execution: Newport Beach, Ca.  Date: _____*1-10*_____ , 2005

Signature: _____*Aludwig*_____
UNITED TITLE COMPANY

I further certify under the penalty of perjury that the illegible portion of the document to which this statement is attached reads as follows (if applicable):

Date: _____ , 2005

Signature: _____
UNITED TITLE COMPANY

1301 Dove Street Suite 300, Newport Beach, CA 92660 (949) 724-3838

EXHIBIT NO. 1/1A OF 1A

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **6.00**

**2009000148432 08:00am 03/30/09**

117 59 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Recording requested by:
**NORTH AMERICAN TITLE COMPANY -
California**

When Recorded Mail To:
**NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
ASSG20090187406561

Space above this line for Recorder's use only

Trustee Sale No. : **20090187406561**    Title Order No.: **910030**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK USA, AS TRUSTEE all beneficial interest under that certain Deed of Trust dated **01/04/2005**, executed by **HOWARD BARNES AND ELIZABETH BARNES**, as Trust or to UNITED TITLE COMPANY, Trustee, and **Recorded on 01/11/2005** as **Instrument No. 2005000022661** of Official Records in the County Recorder's office of **ORANGE** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated                                          JPMORGAN CHASE BANK, N.A by NDEx West,
**MAR 17 2009**                                LLC, It's Attorney-in-Fact

_____                        _____
                                               NDEx West, LLC, Aaron Brown, Associate
                                               Counsel

State of       Texas}
County of    Dallas}

Before me    **Josie R. Molina**    _____, the undersigned Notary Public, on this day personally appeared Aaron Brown , who is the Associate Counsel of NDEx West, LLC, as Attorney-in-Fact of JPMORGAN CHASE BANK, N.A, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _17_ day of _March_, 2009.

My Commission Expires:                          _____
                                               Notary Public Signature

_____                        **Josie R. Molina**
                                               Printed Name of Notary Public

JOSIE R. MOLINA
Notary Public
State of Texas
My Comm. Exp. 11-14-2011

CAASGNDOT rpt - (01/25/08) / Ver-12                                          Page 1 of 1

EXHIBIT NO._____
_____ OF _____

This Document was electronically recorded by
First American NDTS-TSG

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Recording requested by:

When recorded mail to:
Northwest Trustee Services, Inc.
505 N. Tustin Ave., Suite 243
Santa Ana, CA 92705

||||||||||||||||||||||||||| 12.00
2010000153855 11:34am 04/01/10
217 405 S15 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

File No. 7037.03509          Title Order No. 4310523          MIN No.

## SUBSTITUTION OF TRUSTEE

WHEREAS, **UNITED TITLE COMPANY** was the original Trustee under that certain Deed of Trust dated **01/04/05**, executed by **HOWARD BARNES AND ELIZABETH BARNES, HUSBAND AND WIFE AS JOINT TENANTS** to secure certain obligations in favor of **JPMorgan Chase Bank, N.A.**, as Beneficiary, recorded **01/11/05**, as Instrument No.**2005000022661,** of Official Records in the Office of the Recorder of **Orange** County, California and
WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and
WHEREAS, the undersigned desires, to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,
NOW THEREFORE, the undersigned hereby substitutes **Northwest Trustee Services, Inc.**, whose address is: **505 N. Tustin Ave., Suite 243, Santa Ana, CA 92705**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
Dated:                    ** HSBC Bank USA, National Association, as trustee J.P.
** Chase Home Finance LLC  MORGAN Mortgage Trust 2007-A1
As-Attorney-In-Fact-For

11/16/09

By:    Starlene L. Starling    Assistant Secretary

State of ___**Ohio**___     )
County of ___**Franklin**___ )ss.
                             )

On , before me,    Wenona S. Church _____, Notary Public, personally appeared
___Starlene L. Starling___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that the foregoing paragraph is true and correct.    **Ohio**

WITNESS my hand and official seal.

Signature:_____(Seal)

Wenona S. Church
Notary Public, State of Ohio
My Commission Expires
09-26-12

:XHIBIT NO____4____
_____ OF ____

# AFFIDAVIT OF MAILING
## FOR SUBSTITUTION OF TRUSTEE BY CODE

File No. 7037.03509

I, Julian Ojeda, declare:  That I am an officer, agent or employee of Northwest Trustee Services, Inc., whose business address is:

      505 N. Tustin Avenue, Suite 243
      Santa Ana, CA 92705

I am over the age of eighteen years and a copy of the attached Substitution of Trustee was mailed, prior to the recording thereof and in the manner provided in §2924b of the Civil Code of the State of California, to all persons to whom a copy of the Notice of Default was required to be mailed by the provisions of said section.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 26, 2010

_____
Julian Ojeda, Signature of Affiant

EXHIBIT NO_____4____
____1____ OF ____1____

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  **12.00**

**2010000453697** 10:49am 09/14/10

65 404 T09 3 Non-dls

0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Recording requested by:

When recorded mail to and mail tax statements to:
Global Provision LLC
P.O. Box 61536
Irvine, CA 92602

File No. 7037.03509

# Trustee's Deed Upon Sale

APN: 023-506-21

The undersigned grantor declares:
  1) The grantee herein **WAS NOT** the foreclosing beneficiary.
  2) The amount of the unpaid debt together with costs was:
  3) The amount paid by the grantee at the trustee sale was:
  4) The documentary transfer tax is:
  5) Said property is in: Orange

And **Northwest Trustee Services, Inc.,** (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without warranty, express or implied to

**Global Provision LLC**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of **Orange,** State of **California,** and described as follows:

**See Attached Legal Description**

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **01/04/05,** executed by **HOWARD BARNES AND ELIZABETH BARNES, HUSBAND AND WIFE AS JOINT TENANTS,** as Trustor(s), to secure certain obligations in favor of **JPMorgan Chase Bank, N.A.,** as beneficiary, recorded **01/11/05,** as Instrument No. **2005000022661,** of Official Records in the Office of the Recorder of **Orange** County, **California,** and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

EXHIBIT NO _____5_____
\_\_\_\_1\_\_\_ OF \_\_\_7\_\_

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with. Said property was sold by said Trustee at public auction on September 2, 2010 at the place named in the Notice of Sale, in the County of **Orange, California**, in which the property is situated.   Grantee, being the highest bidder at such sale
became the purchaser of said property and paid therefore to said trustee the amount being in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date:  September 9, 2010


**NORTHWEST TRUSTEE SERVICES, INC.**


BY: _____
      Heather Westfall, Assistant Vice President


State of Washington       )
County of King            )

On 9/9/2010 before me, **Julie Bouffleur, Notary Public**, personally appeared **Heather Westfall**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

┌─────────────────────────────┐
│     JULIE BOUFFLEUR         │
│     STATE OF WASHINGTON     │
│     NOTARY PUBLIC           │
│   MY COMMISSION EXPIRES     │
│        02-23-13             │
└─────────────────────────────┘

EXHIBIT NO _____ 5 _____
_____ OF _____ 7

Branch :FUT,User :A156                              Comment:                                                    Station Id :FALE

**EXHIBIT A**

THE LAND IS SITUATED IN **CITY OF HUNTINGTON BEACH**, COUNTY OF **ORANGE** STATE OF **CALIFORNIA**, AND DESCRIBED AS FOLLOWS:

LOT 128 OF TRACT NO. 13821, IN THE CITY OF HUNTINGTON BEACH COUNTY OF ORANGE, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 636 PAGE (S) 21 TO 29 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED OR GRANTED IN DOCUMENTS OF RECORD.

**PAGE 6**

EXHIBIT NO.____5____
____ OF ____